UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK EUGENE SCARBERRY,

                Petitioner,                Case No. 1:16-cv-1162

v.                                    Honorable Janet T. Neff

SHANE JACKSON,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner Patrick Eugene Scarberry is incarcerated with the Michigan Department of Corrrections (MDOC) at the West Shoreline Correctional Facility in Muskegon Heights, Michigan.  On March 27, 2013, a St. Joseph County Circuit Court jury convicted Petitioner on one count of first-degree home invasion, MICH. COMP. LAWS § 750.110(A)(2) and one count of domestic violence, MICH. COMP. LAWS § 750.81(2).  On May 3, 2013, the Court sentenced Petitioner to a term of imprisonment of 10 years to 20 years for home invasion and a sentence of seventy-five days for domestic violence.

Petitioner, with the assistance of counsel, filed a direct appeal of his convictions and sentences in the Michigan Court of Appeals raising three issues:

I.   Petitioner was denied a fair trial by the admission of unduly prejudicial evidence of other acts of domestic violence, as well as by the gratuitous repetition of the allegations by several witnesses.

II.  Petitioner must be resentenced where his sentence is based on incorrectly scored sentencing guidelines and inaccurate information.

III. Petitioner's Sixth and Fourteenth Amendment rights were violated by judicial factfinding, which increased the floor of the permissible sentence, in violation of *Alleyne v. United States*.

(Pet. Attach. A, ECF No. 1-2, PageID.22.)

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion.  *People v. Scarberry*, No. 317183, 2014 WL 6602530 (Mich. Ct. App. Nov. 20, 2014).

Petitioner proceeded to file an application for leave to appeal in the Michigan Supreme Court.  The Michigan Supreme Court held the application in abeyance pending its decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  *People v. Scarberry*, 836 N.W.2d 316

(Mich. 2015).  On October 28, 2015, in lieu of granting leave to appeal, the supreme court reversed the decision of the court of appeals with respect to issue III and remanded to the St. Joseph County Circuit Court to determine whether the trial court would have imposed a materially different sentence under the sentencing procedure described in *Lockridge*, 870 N.W.2d at 502.  *People v. Scarberry*, 870 N.W.2d 896 (Mich. 2015).  In all other respects, however, the supreme court denied the application for leave to appeal.  *Id.*

On remand, the trial court considered and denied Petitioner's request for resentencing in light of *Lockridge*, 870 N.W. 2d at 502.  The trial court stated:

> [P]ursuant to part VI of the *Lockridg*e decision, the Court reviewed the file and the Presentence Report.  The Court being now aware that the guidelines are advisory only, has determined that the original sentence was just and reasonable and would not have changed it knowing the guidelines are advisory.

(Nov. 24, 2015 St. Joseph Cty. Circuit Ct. Order, Attach. C, ECF No. 1-2, PageID.60.)

Petitioner did not pursue any appeal of the trial court's order on remand.

On September 19, 2016, Petitioner filed his habeas corpus petition in this Court.[1]  He raises the same issues he raised in the Michigan Court of Appeals and Supreme Court, except that he has restated Issue I to expressly reference his constitutional rights and the Sixth and Fourteenth Amendments.  (Grounds Raised, Pet. Attach. C, ECF No. 1-2, PageID.59.)

---

[1]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his application on September 19, 2016, and it was received by the Court on September 22, 2016.  September 19, 2016, is the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

**Discussion**

I.    Factual Allegations

Petitioner concisely recounted the underlying facts and trial testimony in his

application for leave to appeal filed in the Michigan Supreme Court:

The charges arose out of an alleged home invasion at the home of Mr. Scarberry's exwife, Tammy Scarberry, in Stu[r]gis, Michigan. Mr. Scarberry denied committing the offense, and had an alibi to verify his whereabouts at the time of the alleged incident.

*        *        *

*Trial Testimony*

Tammy Scarberry was formerly married to Mr. Scarberry, and they had an 11-year-old daughter, Ashlie. [Trial 3/26/13, 97-98] There were disputes because Mr. Scarberry did not have visitation rights. [Trial 3/26113, 122-123]

Ms. Scarberry said she and Ashlie were asleep at about 4:30 a.m. on July 23, 2012, when a man she identified as Mr. Scarberry entered through the bedroom window. [Trial 3/26/13, 98] The window was open; the intruder broke through the screen. [Trial 3/26/13, 99] She further claimed that Mr. Scarberry slapped her one time on the right cheek. [Trial 3/26/13, 99-101, 126-127] Then Mr. Scarberry left through the front door. [Trial 3/26/13, 123] She called her brother, who then called police. [Trial 3/26/13, 100]

Ashlie Scarberry likewise claimed that she was asleep with her mother when Mr. Scarberry broke into the screen and entered through the bedroom window. [Trial 3/26/13, 140] She added that Mr. Scarberry slapped her mother on the face, once. [Trial 3/26/13, 141, 143] He told her, "come on, Ashlie," and she said, "no." [Trial 3/26/13, 140] Then he left through the front door. [Trial 3/26/13, 143] She was not wearing her glasses when the incident occurred. [Trial 3/26/13, 142]

The defense objected when the prosecutor elicited testimony that Tammy Scarberry had obtained a Personal Protection Order against Mr. Scarberry. [Trial 3/26/13, 106] The court held a hearing away from the jury, at which it admonished counsel for failing to file a motion *in limine* to exclude the evidence, stating that "the prejudice is already attached because it was already offered that he had a PPO." [Trial 3/26/13, 107] Counsel argued, *inter alia*, that introduction of the conduct underlying the PPO would be substantially more probative. [Trial 3/26/13, 109-110]

-4-

Nevertheless, the court decided to admit the evidence, "to determine a pattern of behavior," pursuant to MCL 768.27b.  [Trial 3/26/13, 113]

The PPO was admitted into evidence [Trial 3/26/13, 118] and the complainant proceeded to testify that she had obtained it in September or October 2011 because Mr. Scarberry had "slapped [her] and put [her] in a headlock."  [Trial 3/26/13, 116]  The court instructed the jury that the PPO was being offered to show "history between the parties" and to show "their prior relationship and behavior."  [Trial 3/26/13, 118]

The defense objected when the prosecutor elicited testimony from Tammy Scarberry's brother, Kent Schmucker, repeating what she told him when she called him on the phone.  [Trial 3/26/13, 146-147]  Treating it as a hearsay objection, the court admitted the testimony.  [Trial 3/26/13, 148]  Mr. Schmucker recounted that Ms. Scarberry called a few minutes after 4:00 a.m., bawling, hysterical, almost hyperventilating, and asserted that Mr. Scarberry had broken in and slapped her.  [Trial 3/26/13, 146, 148]

The story was repeated, again over defense objection [Trial 3/26/13, 151 ], by Officer Matt Boerman, who was dispatched for a burglary at 4:26 a.m.  [Trial 3/26/13, 150]  Officer Boerman reiterated Ms. Scarberry's report that Mr. Scarberry had broken into her home and slapped her.  [Trial 3/26/13, 151]  Ms. Scarberry complained of pain to her face; her face was red, but he couldn't tell if it was from injury or from crying.  [Trial 3/26/13, 152]  He located the window screen outside.  [Trial 3/26/13, 152]

Mr. Scarberry's daughter, Kellie Scarberry, arrived at 4:30 a.m., while police were there.  [Trial 3/26/13, 171]  There were no visible injuries to Tammy Scarberry's face.  [Trial 3/26113, 173]

*Mr. Scarberry's alibi*

Mr. Scarberry lived with his daughter Malinda and her fiance, Chris Bohne in Colon, which was about a 30 to 35 minute drive from Stu[r]gis.  [Trial 3/26/13, 177, 179]  Mr. Scarberry denied going to the complainant's house on the night in question.  [Trial 3/26/13, 195]  He recalled that he and the complainant were having disagreement because she would not allow him to visit Ashlie, even though they shared joint custody.  [Trial 3/26/13, 191]  He injured his shoulder playing horseshoes on July 22nd, so he started walking to Sturgis hospital around 11:00 p.m.  [Trial 3/26113, 193]  He arrived around 3:00 a.m. [on July 23rd], was given a shot, and left at about 4:00 a.m.  [Trial 3/26/13, 193-194]  He caught a ride, and arrived home between 4:00 a.m. and 4:20 a.m.  [Trial 3/26/13, 194]  He went to sleep on the couch, leaving the paperwork from the hospital on the coffee table.  [Trial 3/26/13, 195]  He slept until about 11:00 a.m. or noon.  [Trial 3/26/13, 195]

Hospital records indicated that Mr. Scarberry was in the emergency room 2 or 3 miles away from the complainant's home, on July 23, 2010 from 3:10 a.m. until 3:50 a.m. [Trial 3/26/13, 161-162]

Mr. Scarberry's alibi was corroborated by Chris Bohne, who recalled waking up at 4:00 a.m., and finding Mr. Scarberry asleep on the couch on the morning in question. [Trial 3/26/13, 177] He saw the documents indicating that Mr. Scarberry had gone to the hospital that morning. [Trial 3/26/13, 177] Mr. Scarberry had injured himself playing horseshoes the previous day. [Trial 3/26/13, 178]

Malinda Scarberry similarly recalled seeing her father asleep on the couch between 4:15 and 4:30 that morning, and she remembered seeing the paperwork from his hospital visit. [Trial 3/26/13, 183]

Notwithstanding Mr. Scarberry's alibi, the jury convicted him, as charged, of first degree home invasion and domestic assault.

(Appl. for Leave to Appeal, ECF No. 1-2, PageID.26-29.)

II.    Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case."  *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   Other acts evidence

Petitioner complains that his trial was rendered fundamentally unfair by the admission of "other acts" evidence in the form of testimony from his ex-wife regarding her Personal Protection Order against him and the underlying violence that resulted in the entry of the order.  The trial court admitted the evidence "'to determine a pattern of behavior . . . .'" (Appl. for Leave to Appeal, ECF No. 1-2, PageID.27.)  The trial court instructed the jury that evidence regarding the Personal Protection Order and the violence upon which it was based was offered to show "'history between the parties'"as well as "'their prior relationship and behavior.'" (*Id.*)

The Michigan Court of Appeals concluded admission of the evidence was proper:

> Defendant first argues that the trial court erred in admitting his ex-wife's testimony that she had obtained a PPO against him in September or October 2011, approximately nine to ten months before the events giving rise to the instant charges, because "he slapped [her] and put [her] in a headlock."  Defendant concedes that, under MCL 768.27b(1), "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose which is relevant, if it is not otherwise excluded under Michigan rule of evidence 403."  Defendant's ex-wife's testimony regarding the PPO was relevant because it contained allegations that defendant had exhibited the same violent behavior, i.e., slapping, toward her as he was alleged to have exhibited in the instant case.  Nonetheless, under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[ .]"  In addition to its aforementioned relevance, the PPO testimony illustrated the nature of defendant's relationship with his ex-wife and assisted the jury in assessing his ex-wife's credibility.  *People v. Meissner*, 294 Mich. App. 438, 452; 812 N.W.2d 37 (2011).  Moreover, any prejudicial effect of the trial court's decision to allow testimony regarding the PPO did not substantially outweigh its probative value.  *People v. Cameron*, 291 Mich. App. 599, 612; 806 N.W.2d 371 (2011).  The testimony was brief, *see People v. Railer*, 288 Mich. App. 213, 220; 792 N.W.2d 776 (2010), and the trial court minimized the prejudicial effect of the evidence by instructing the jury that defendant was "not on trial for what happened as alleged in the PPO or anything related to the

PPO[,]" *see Cameron*, 291 Mich. App. at 612.  Accordingly, the trial court did not abuse its discretion in admitting testimony regarding the PPO obtained against defendant by his ex-wife.

*Scarberry*, 2014 WL 6602530, at *1 (footnote omitted).

In the state courts, Petitioner raised his challenges to the admission of evidence principally as violations of state law.  Petitioner first argued that there was no purpose for which the evidence was relevant; thus, under Michigan Rule of Evidence 401 and MICH. COMP. LAWS § 768.27b(1), the evidence should not be admitted.  (Appl. for Leave to Appeal, ECF No. 1-2, PageID.31.) Alternatively, Petitioner argued that the evidence was inadmissible because it was more prejudicial than probative under Michigan Rule of Evidence 403 and MICH. COMP. LAWS § 768.27b(1).  (*Id.*).  The admission of all of the irrelevant and/or prejudicial "other acts" evidence, Petitioner then argued, rendered his trial unfair.

The admissibility of the evidence under MICH. COMP. LAWS § 768.27b or Michigan Rules of Evidence 401and 403, are purely issues of state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Thus, the Michigan Court of Appeals's determinations that the "other acts" evidence was admissible under MICH. COMP. LAWS § 768.27b, relevant under Michigan Rule of Evidence 401, and more

probative than prejudicial under Michigan Rule of Evidence 403, conclusively resolves those state law issues.

That leaves Petitioner to the very limited review afforded to state-court evidentiary rulings under the Due Process Clause.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552.  Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000).

Petitioner has not met this difficult standard.  There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior "bad acts" evidence to show propensity to commit a charged crime.  *Id.* at 75 n. 5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v.*

*United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has also found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512. Petitioner's habeas challenge to the admissibility of the "other acts" evidence– whether that evidence was admitted in the form of the victim's testimony, testimony from her daughter, testimony from her brother, or testimony from the investigating officer– is without merit.

IV.   Testimony regarding the victim's out-of-court statements

A.   Due process

On his direct appeal, Petitioner challenged the testimony of the victim's brother and the investigating police officer regarding statements the victim made shortly after the incident.  The trial court permitted the "hearsay" evidence under the excited utterance exception, Michigan Rule of Evidence 803(2).  *Scarberry*, 2014 WL 6602530, at *1.  Petitioner contended the "excited utterance" testimony was needlessly cumulative and, thus, should not be admitted under Michigan Rule of Evidence 403.  The court of appeals rejected this challenge as well: "We find that the evidence was not needlessly cumulative because it was probative of defendant's guilt, occurred close in time to the commission of the charged crimes, and was relevant to the jury's assessment of defendant's ex-wife's credibility."  *Id.*  (citation omitted).  The court of appeals conclusion on this state law issue binds this Court.  *See* Section III, *infra*.

Even though the admission of this evidence does not violate state law, it is possible the evidence might render Petitioner's trial fundamentally unfair nonetheless.  Petitioner, however, has failed to demonstrate that the admission of this evidence violated his due process rights.  He has

not shown the state court's determination is contrary to, or inconsistent with clearly established

federal law.  He has also failed to demonstrate with any evidence, much less clear and convincing

evidence, that the state court's presumptively correct determinations of fact regarding the probative

value and relevance of the evidence are unreasonable.  Petitioner's due process challenge to the

admission of this evidence has no merit.

B.    Confrontation Clause

In "federalizing" his claim for habeas review, in addition to the Fourteenth

Amendment, Petitioner references the Sixth Amendment.  Because the testimony at issue presented

out-of-court statements, it is possible Petitioner intends to challenge the testimony on Confrontation

Clause grounds.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to

be confronted with the witnesses against him."  U.S. CONST. amend. VI.  The Supreme Court has

long read this right as securing an adequate opportunity to cross-examine adverse witnesses.  *United

States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43

(1895) and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  As stated by the Court:

> Our own decisions seem to have recognized at an early date that it is this literal right
> to 'confront' the witness at the time of trial that forms the core of the values
> furthered by the Confrontation Clause:
>
>> "The primary object of the constitutional provision in question was
>> to prevent depositions or ex parte affidavits, such as were sometimes
>> admitted in civil cases, being used against the prisoner in lieu of a
>> personal examination and cross-examination of the witness, in which
>> the accused has an opportunity, not only of testing the recollection
>> and sifting the conscience of the witness, but of compelling him to
>> stand face to face with the jury in order that they may look at him,
>> and judge by his demeanor upon the stand and the manner in which
>> he gives his testimony whether he is worthy of belief."  *Mattox v.
>> United States*, 156 U.S. 237, 242-43 (1895).

-13-

Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

*California v. Green*, 399 U.S. 149, 157-58 (1970).

In *Green*, the Court compared the purposes of confrontation with the dangers in admitting an out-of-court statement. Confrontation "(1) insures that the witness will give his statements under oath – thus impressing the witness with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for discovery of truth'; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Green*, 399 U.S. at 158. Although an out-of-court statement may not have been subject to any of these protections, it regains the lost protections if the declarant is present and testifying at trial. *Id.* Further, an inability to cross-examine the witness at the time the out-of-court statement is made is not of crucial significance as long as the witness is subject to full and effective cross-examination at trial. *Id.* at 159. Similarly, the jury's inability to view the declarant's demeanor when the statement was made is not important when the jury may view that witness at trial either affirming or disavowing the statement. *Id.* at 160. In other words, contemporaneous cross-examination before the jury is not so much more effective than subsequent examination at trial that it must be made the touchstone of the Confrontation Clause. *Id.* at 161. Thus, where the declarant testifies and is cross-examined, "our cases, if anything, support the conclusion that the admission of his [or her] out-of-court statements does not create a confrontation problem." *Green*, 399 U.S. at 162; *see also Owens*, 484 U.S. at 560 (inquiry into the "indicia of reliability" or the "particularized guarantees of trustworthiness" of the

-14-

out-of-court statements is not called for when the declarant is available at trial and subjected to unrestricted cross-examination, because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements").

The declarant, the victim, testified at trial, and Petitioner's counsel subjected her to unrestricted cross-examination. Petitioner's Confrontation Clause argument, therefore, has no merit.

V.    Petitioner's sentence

Petitioner raises several challenges to his sentence on the home invasion count. Petitioner was sentenced to a minimum term of 10 years for the home invasion offense.   The Sentencing Information Report (Appl. for Leave to Appeal App. A, ECF No. 1-2, PageID.47), initially scored Petitioner's variables as follows: Prior Record Variable (PRV) 2–30 points; Offense Variable (OV) 3–5 points; OV 4–10 points; OV 10–15 points; OV 12–5 points; OV 13–0 points; and OV 19–15 points.[2]  That yielded a Total PRV of 30, a PRV level of D, and a Total OV of 50, an OV level of V.  Under the Michigan sentencing guidelines, as a fourth habitual offender, Petitioner's minimum sentence would fall in a range of 78 months to 260 months.  Michigan Judicial Institute, State of Michigan Sentencing Guidelines Manual (2012), p. 99, https://mjieducation.mi.gov/felony-sentencing-online-resources (hereinafter "SGM").

At sentencing, the trial court changed the scoring slightly.  OV 19 was changed from 15 points to 0 points.  OV 13 was changed from 0 points to 25 points.  That changed Petitioner's Total OV to 60 points, but it did not change his OV level so his minimum sentence range remained the same.   Petitioner contends that the court erred in scoring OV 3 regarding level of bodily injury,

---

[2]The remaining variables were all scored 0 points.  (Appl. for Leave to Appeal App. A, ECF No. 1-2, PageID.47.)

OV 4 regarding serious psychological injury, OV 10 regarding predatory conduct, and OV 12 regarding contemporaneous felonious criminal acts.[3]

Petitioner further contends that the trial court based its sentence on inaccurate information. Petitioner states that the court's sentence is premised on the invalid assumption that Petitioner slapped the victim twice, but the trial testimony of the victim and her daughter, Petitioner claims, shows only a single slap. (Appl. for Leave to Appeal, ECF No. 1-2, PageID.40.)

Finally, Petitioner contends that the trial court engaged in judicial fact-finding that increased the floor of the range of permissible sentences in violation of the rule set forth in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), and the Sixth and Fourteenth Amendments.

A.      Improper scoring of offense variables

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant

---

[3]The court of appeals concluded that the trial court's scoring of OV 3, OV 4, and OV 10 was appropriate. *Scarberry*, 2014 WL 6602530, at *2. The court of appeals agreed that the trial court's scoring of 5 points for OV 12 was wrong. *Id.* It should have been scored as 0 points. *Id.* That change, however, had no impact on Petitioner's guidelines minimum range. *Id.* The court of appeals' determinations with respect to the scoring are binding on this Court. *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6.

has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987). Accordingly, improper scoring, standing alone, is not cognizable on habeas review.

        B.        Inaccurate information

Although state law guidelines scoring errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). It will be difficult to conclude that the scoring errors were sufficiently egregious here. If the offense variables were scored in accordance with Petitioner's argument, his OV Total would be 30 points rather than 60 points. His minimum sentence range would change from 78-260 months to 57-190 months. (Appl. for Leave to Appeal, ECF No. 1-2, PageID.40.) Thus his minimum sentence of ten years would still fall in the lower half of the range.

Perhaps in recognition of the minimal effect of the scoring errors, Petitioner turns to another basis for challenging the constitutionality of his sentence. He claims it is based on inaccurate information: two slaps instead of one slap.

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court

was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

The Michigan Court of Appeals rejected Petitioner's claim.  It concluded the number of slaps was not material. *Scarberry*, 2014 WL 6602530, at *2 ("[T]here is no indication in the record that the presence of an alleged second slap in defendant's [presentence investigation report] altered the trial court's sentence . . . .").  Petitioner's slapping of the victim found expression in sentencing through OV 4 regarding bodily injury.  The trial court found the injury caused by Petitioner was sufficient to score 10 points.  That scoring was upheld by the Michigan Court of Appeals.  Petitioner has failed to show that the state court's determination—that the "injury caused" did not depend on the presence of a second slap—is unreasonable.

Moreover, when one looks beyond the guidelines scoring to the trial court's discretionary selection of a minimum sentence from within the guidelines range, Petitioner has not shown, and cannot show, that the information regarding "two slaps" was false or material to his sentence. *Tucker*, 404 U.S. at 447.  Petitioner's statement of the facts acknowledges that the victim testified regarding the one slap on July 23, 2012, and a second slap that prompted the issuance of the personal protection order.  (Appl. for Leave to Appeal, ECF No. 1-2, PageID.27-28.)  Thus, Petitioner has failed to demonstrate that the state court's determinations with regard to the fairness of his sentence were contrary to or inconsistent with clearly established federal law, or that the

decisions were based on an unreasonable determination of the facts. His habeas claims regarding scoring errors or sentencing based on false information, therefore, are without merit.

C.     Judicial fact-finding

Petitioner argues that his sentence was contrary to clearly established federal law because the sentencing judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and ending with *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated Sixth Amendment rights, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing

-19-

guideline range. *Id.*; *see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

The Supreme Court expanded the *Blakely* reasoning to mandatory minimum sentences in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), decided less than three months after Petitioner was sentenced. Shortly thereafter, while Petitioner's application for leave to appeal was still pending in the Michigan Court of Appeals, that court concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013), *rev'd* 870 N.W.2d 561 (2015).[4] The Michigan Court of Appeals relied on *Herron* when it rejected Petitioner's *Alleyne* argument. *Scarberry*, 2014 WL 6602530, at *3.

The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory

---

[4]*Herron* was reversed following the decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *Lockridge* is discussed in detail below.

-20-

*statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (emphasis added) (quoting *Alleyne*, 133 S. Ct. at 2161).

The Michigan Supreme Court held Petitioner's application for leave to appeal in abeyance pending the court's decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  In *Lockridge*, in a 5-2 decision, the Michigan Supreme Court considered the question the Michigan Court of Appeals had faced in *Herron* and reached the opposite conclusion.  The *Lockridge* court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506.  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-521.[5]

The Michigan Supreme Court's decision in *Lockridge* did not render the result "clearly established" for purposes of habeas review.  This Court may consider only the "clearly established" holdings of the United States Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  For the same reasons, it may not consider the holdings of state courts.  Instead, this Court may only grant relief on habeas review if the state court's application of clearly

---

[5]In *Lockridge*, the Michigan Supreme Court determined it could eliminate the Sixth Amendment problem by making the guideline minimum range advisory and the minimum sentence a matter for the court's discretion.  That was the same remedy the United States Supreme Court had adopted previously in *Booker*, 543 U.S. at 245.  The *Booker* court reasoned that if the sentencing rules were not mandatory and did not impose binding requirements on sentencing judges "the statute falls outside the scope of *Apprendi's* requirement."  *Booker*, 543 U.S. at 259.

established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's minimum sentencing guidelines. *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief.

Even if it could be said that the decision in *Alleyne,* as applied to the Michigan sentencing scheme, and as that scheme was interpreted by the *Lockridge* court, represented "clearly established" federal authority for purposes of collateral habeas corpus review, Petitioner could not prevail. The Michigan Supreme Court sent Petitioner back to the trial court for sentencing that was entirely discretionary. The trial court imposed the same sentence, this time in the free exercise of his discretion with the sentencing guidelines serving a purely advisory function.

The judicial fact-finding to which Petitioner now objects had no bearing on the determination of Petitioner's guidelines minimum range. Thus, *Alleyne* does not apply here. From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here on remand, violates the Sixth Amendment.

Whether considered before or after *Lockridge*, the trial court's determination of Petitioner's sentence on remand represents an exercise of the court's discretion. The facts found to support the exercise of that discretion do not "increase[ ] the penalty for the crime beyond the prescribed statutory maximum[,]" *Apprendi*, 530 U.S. at 490, or "increas[e] the mandatory minimum[,]" *Alleyne*, 133 S.Ct. at 1260, and therefore need not "be submitted to a jury, [or be] proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Petitioner has failed to demonstrate that his sentence is contrary to clearly established federal law because it violates his Sixth Amendment rights.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under

-23-

Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   November 4, 2016                        /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge